**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-04020-TC

---

ROBERT J. M.,[1]

*Plaintiff*

v.

FRANK BISIGNANO,[2]
COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Robert M. claims he is disabled and cannot work due to several mental impairments. He seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. For the following reasons, the Commissioner's final decision is affirmed.

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

[2] Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Bisignano is substituted for the former Acting Commissioner, Michelle King, as the defendant. No further action is necessary. See 42 U.S.C. §§ 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); 1383(c)(3) (same for Supplemental Security Income benefits).

# I

## A

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 107 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e),

416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or his past relevant work in light of his or his RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

## B

Citing various mental impairments, including depression and anxiety, Plaintiff protectively applied to the agency to request child's insurance benefits and supplemental security income. Doc. 11 at 1.[3] He claimed eligibility because his alleged disability began before turning twenty-two, a precondition to such benefits. *See* 42 U.S.C. § 402(d)(1)(G); 20 C.F.R. § 404.350(a)(5). The agency denied his initial claims. Adm. Rec. at 174–83. He then submitted a request for reconsideration for both claims, alleging that the agency failed to review some of his medical and non-medical reports. *See* Adm. Rec. at 170–73, 184–86. After the agency denied his reconsideration requests, he requested a hearing by an ALJ, alleging that the agency failed to consider opinions from all of his doctors, and that he had additional symptoms to report. *See id.* at 193. After a hearing at which the Plaintiff, his mother, and a vocational expert testified, the ALJ denied his claims. *Id.* at 17. He then requested a review with the Appeals Council, which also denied his claim. Doc. 11 at 2. He now appeals the ALJ's decision. *Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. Adm. Rec. at 20. At step two, the ALJ found that Plaintiff had the following

---

[3] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

severe impairments: "major depressive disorder, generalized anxiety disorder, autism, unspecified neurodevelopmental disorder, and polysubstance abuse." *Id.* The ALJ then proceeded to step three and determined that Plaintiff did not have an impairment that met or medically equaled a listing. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

The ALJ then proceeded to define Plaintiff's RFC. Adm. Rec. at 22. The ALJ found that Plaintiff could "perform a full range of work" with several nonexertional limitations. *Id.* Specifically,

> "The claimant is able to [apply] common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks, in a work environment free of fast-paced production requirements; involving only simple work-related decisions with few if any workplace changes. The claimant can have occasional interaction with the general public and frequent interaction with co-workers and supervisors."

*Id.* The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ also considered medical opinions and prior administrative medical findings. *Id.*

At step four, the ALJ determined that Plaintiff had no past relevant work. Adm. Rec. at 28. The ALJ then proceeded to step five. Relying on a vocational expert, the ALJ determined that suitable work for someone with Plaintiff's age, education, work experience, and RFC exists in significant numbers in the national economy. *Id.*

## II

Plaintiff argues that the ALJ's RFC determination was legally flawed and therefore not supported by substantial evidence, resulting in a faulty hypothetical presented to the vocational expert at step five. But the ALJ applied the correct legal standards in assessing Plaintiff's RFC, and his RFC determination is supported by substantial evidence. As a result, the Commissioner's final decision is affirmed.

4

**A**

Plaintiff first claims that the ALJ erred at step four in assessing his RFC. Doc. 11 at 4. Specifically, he argues that the ALJ did not follow SSR 96-8p, which requires the RFC assessment to "consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *5, *7. The ALJ erred, Plaintiff continues, by failing to consider the consistency of the medical opinions. Doc. 11 at 15.

Social Security Ruling 96-8p explains how an ALJ must formulate a claimant's RFC. 1996 WL 374184, at *1. In assessing RFC, an ALJ "is permitted, and indeed required, to rely on all record evidence, including but not limited to medical opinions in file." *Wells v. Colvin*, 727 F.3d 1061, 1071–72 (10th Cir. 2013) (citing SSR 96-8p). The RFC assessment must be based on all relevant record evidence, including medical history, lay evidence, recorded observations, medical source statements, and effects of symptoms. SSR 96-8p, 1996 WL 374184, at *5.

In assessing RFC, an ALJ must consider consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ must explicitly discuss the most important factors: supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2); *see Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022). "Supportability examines how closely connected a medical opinion is to the evidence and the medical source's explanations, [whereas] [c]onsistency . . . compares a medical opinion to the evidence." *Zhu v. Comm'r*, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2)).

Plaintiff argues that the ALJ erred in his consistency analysis by failing to consider the consistency among the medical opinions he found unpersuasive. *See* Doc. 11 at 10–14. In particular, the ALJ was not persuaded by opinions of state agency psychologists limiting Plaintiff to jobs involving one-to-two instructions in a low contact work environment with familiar surroundings even though these opinions were supported by two additional providers. *See* Adm. Rec. at 27–28. But there is no requirement that the ALJ consider whether the medical opinions are consistent with each other. *See Harrison v. Comm'r, SSA*, No. 22-4108, 2024 WL 1856553, at *3–4 (10th Cir. Apr. 29, 2024) (holding no reversible error where the ALJ failed to expressly compare

5

the state agency psychologists' opinions with those of two other providers).

The ALJ sufficiently discussed the consistency of the medical opinions to other evidence. In particular, the ALJ found the state agency psychologists' opinions inconsistent with the treatment records and mental status exams. Adm. Rec. at 27. He then considered the opinion of Dr. Geenens, a psychiatrist Plaintiff had previously seen, finding it inconsistent with treatment records and mental status exams, followed by the opinion of Kristy Cramer LCPC, a licensed clinical professional with whom Plaintiff had a consultative evaluation, finding it inconsistent with medical records. Adm. Rec. at 27–28. Because the ALJ explained how each opinion was inconsistent with evidence in the record, he applied the consistency factor required by 20 C.F.R. § 416.920c(c)(2).

Plaintiff further argues that the RFC determination was not supported by substantial evidence. Doc. 11 at 11. Specifically, he argues that the record evidence does not support the ALJ's adoption of less restrictive RFC limitations than opined by the state agency psychologists. Doc. 11 at 7–10. That argument also fails.

The ALJ's less restrictive RFC findings are supported by substantial evidence. *Contra* Doc. 11 at 7–10. The ALJ explained that he found the state agency psychologists' opinions only partially persuasive, as required by SSR 96-8p, because there were "mental status examinations noting that the claimant is oriented with logical thought process, normal memory and cognition and generally happy mood." Adm. Rec. at 27. Those findings, the ALJ determined, were more consistent with "simple, routine repetitive work in an environment free of fast paced production and with few if any work -place changes." *Id.* And these findings, along with Plaintiff's moderate functional limitations, caused the ALJ to reject the more restrictive limitations championed by the state agency psychologists. *Id.* Plaintiff's argument amounts to a request for a federal court to reweigh the evidence. That is something a reviewing court may not do. *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 909 (10th Cir. 2023).

Plaintiff's contention appears to misapprehend the role played by ALJs. It is the ALJ, not the physician, who is charged with determining Plaintiff's RFC. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Actually, "ALJs are directed to 'not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s).'" *Harrison v. Commissioner, SSA*, 2024 WL 1856553, at *5 (10th Cir. Apr. 29, 2024) (quoting 20 C.F.R. § 416.920c). The ALJ is only required to explain why he did not adopt the opinions of the state agency psychologists. *Id.* (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")).

Plaintiff takes issue with the ALJ's rejection of Cramer's findings. Doc. 11 at 9–10. But the ALJ explicitly considered Cramer's opinion, finding it unpersuasive because it was not supported by mental status exams and medical records noting normal findings and generally happy mood. Adm. Rec. at 28. Plaintiff also cites certain medical evidence corroborating the opinions of Cramer and Geenens to further argue that the ALJ's less restrictive RFC finding is not supported by substantial evidence. *See* Doc. 11 at 12–14. But where evidence can support a conclusion either way, the ALJ's conclusion is not to be disturbed. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Finally, Plaintiff argues that the ALJ failed to consider Plaintiff's psychological test results. Doc. 11 at 16. The ALJ is not required to explicitly discuss every piece of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). And in any case, the ALJ considered the test results. *See* Adm. Rec. at 22. Specifically, in making his RFC finding, the ALJ stated that he "has considered all symptoms and to the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence . . .[and] considered the medical opinion(s) and prior administrative medical finding(s)." *Id.* Absent contrary evidence—and there is no evidence to the contrary in this case—we accept the ALJ's representation. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice … is to take a lower tribunal at its word when it declares that it has considered a matter.") (internal citations omitted).

## B

Plaintiff also argues that the ALJ erred at step five in two ways. First, he argues that the RFC itself was flawed, so the ALJ's question to the vocational expert must have been flawed. *See* Doc. 11 at 18–19. But the ALJ does not need to include in his hypothetical to the vocational expert limitations he has not found to exist. *See B.A.Y. v. Commissioner, SSA*, 2024 WL 2844697, at *5 (10th Cir. June 5, 2024) (citing *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (hypothetical

questions "must include all (and only) those impairments borne out by the evidentiary record.")). If an ALJ's RFC determination is supported by substantial evidence and the hypothetical is based on that RFC determination, the hypothetical "adequately reflected the impairments and limitations that were borne out by the evidentiary record." *Id.* (internal citations and quotations omitted). Because the ALJ based his hypothetical on his RFC findings, which were supported by substantial evidence, his hypothetical included all of Plaintiff's limitations.

Second, Plaintiff argues that the ALJ failed to reconcile a conflict between the vocational expert's testimony and the DOT. Doc. 11 at 18. In particular, Plaintiff contends that the vocational expert identified reasoning level two jobs despite Plaintiff's RFC which limited him to reasoning level one jobs. *Id.* at 18–19.

But there was no conflict to resolve. *Contra* Doc. 11 at 18. The ALJ's hypothetical to the vocational expert, which was based on Plaintiff's RFC, provided that Plaintiff has the ability "to apply commonsense understanding," to carry out "simple, routine, and repetitive tasks," and the need to work in an environment with few changes and only "occasional interaction with the general public." *Id.* at 18; *see* Adm. Rec. at 22. This hypothetical is not facially inconsistent with the DOT's definition of reasoning level two jobs defined as the "ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Doc. 11 at 18 (citing *Dictionary of Occupational Titles* (DOT), Vol. II at 1011). And the ALJ considered and explicitly rejected state agency psychologists' opinions that Plaintiff should be limited to jobs involving only one to two step instructions, a restriction that would limit Plaintiff to level one reasoning jobs. Adm. Rec. at 27. The ALJ's hypothetical contemplating level two jobs was consistent with his RFC findings.

Plaintiff says the RFC is more consistent with level one reasoning which requires a person to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* Doc. 11 at 18. But Plaintiff has not identified any factual conflict between his RFC to "carry out detailed, but uninvolved instructions" when carrying out "simple tasks" and reasoning level two, which requires him to "carry out detailed but uninvolved instructions … [d]eal with problems involving a few concrete variables in or from standardized situations" Doc. 11 at 18–19; *see Alicia G. v. O'Malley*, 2024 WL 53105, at *9 (D. Kan. Jan. 4, 2024)

8

(holding there was no conflict for the ALJ to resolve at step five when RFC limited Plaintiff to "carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks" and a job listed in the DOT for reasoning level two). In fact, the ALJ adopted, practically verbatim, the first half of the DOT's reasoning level two definition.

The ALJ did not run afoul of the requirements to resolve conflicts pursuant to SSR 00-4p. *Contra* Doc. 11 at 17–19. Plaintiff fails to identify any meaningful conflict. And the ALJ asked the vocational expert if her testimony was consistent with the DOT and the expert responded that it was. Adm. Rec. at 70. The ALJ's hypothetical appears to have no actual or apparent conflict with the jobs identified by the vocational expert. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (requiring that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict"). That is adequate to discharge the ALJ's duty.

## III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: September 30, 2025         s/ Toby Crouse
                                 Toby Crouse
                                 United States District Judge